UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN STEPHENS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 4:11CV706MLM** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Alan Stephens ("Plaintiff") for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.  Plaintiff filed a Brief in Support of Plaintiff's Complaint. Doc. 16.  Defendant filed a Brief in Support of the Answer. Doc. 18.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 7.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on January 7, 2009. Tr. 101-107.  After receiving an unfavorable determination, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 58-62, 65-66.  By decision dated February 18, 2010, the ALJ found Plaintiff not disabled through the date of the decision. Tr. 10-27.  The Appeals Council denied Plaintiff's request for review on March 18, 2011. Tr. 1-4.  As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines a "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to reweigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because

the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of pain, the ALJ must consider:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.  The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id.  The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739, F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly discuss each Polaski

6

factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical Vocational Guidelines is appropriate if the ALJ discredits the

plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if substantial evidence exists that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff contends that he became disabled on October 15, 2008, due to liver failure, hepatic encephalopathy, and depression. Plaintiff testified at the hearing that he was fifty-two years old and that he weighed 290 or 295 pounds; that he graduated from high school; and that he previously worked as a pipe layer. Tr. 33-34, 41. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date; that he had the severe impairment of hepatitis C cirrhosis; that he had diabetes mellitus, an adjustment disorder, and a history of herniated pulposus and lumbar strain; that Plaintiff did not have an impairment or combination of impairments that meet or medically equaled a listed impairment; that Plaintiff had the RFC for light work, with certain limitations; that Plaintiff was unable to perform his past relevant work as a pipe fitter and heavy equipment operator; that based on the testimony of a VE there was work in the national economy which Plaintiff could perform; and that, therefore, Plaintiff was not disabled.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to point to some medical evidence to support his RFC determination; because the ALJ drew upon his own inferences from the medical report of Bruce Bacon, M.D.; because the ALJ failed to credit Plaintiff's statement that he was on a list for a liver transplant; because the ALJ gave improper weight to the opinion of the State Agency physician and to the opinion of a non-examining psychiatrist; because the ALJ failed to follow the standard set forth in 20 C.F.R. § 404.1527 upon considering the medical opinion evidence; and because the hypothetical which the ALJ posed to the VE and upon which the ALJ relied did not "capture the concrete consequences of Plaintiff's impairment."

## A.     Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel,

9

224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that when Plaintiff applied for benefits he stated that "he had hepatitis C, diabetes, and back surgery, but these were not making him disabled." Tr. 21, 119. The ALJ also considered that a Disability Report stated that Plaintiff's "alleged impairment was liver failure - encephalopathy." Tr. 21. Indeed, when asked by a Social Security interviewer, Plaintiff stated that the reason he could not work was liver failure. Tr. 121. The court also notes that while Plaintiff did not allege disability due to a mental condition on his application, he made such an allegation before the ALJ and, likewise, does so in his Brief in Support of Complaint. The Eighth

Circuit holds that it is significant that a claimant has failed to alleged disability due to a particular condition. See Wall v. Astrue, 561 F.3d 1048, 1062 (8th cir. 2009) (holding that because the claimant did not allege that she suffered from a severe mental impairment, the "ALJ's failure to discuss listing 12.05C [was], therefore unsurprising"); Dunahoo, 241 F.3d at 1039 (holding that the fact that the claimant did not allege depression on his benefits application was significant even though evidence of depression was later developed). The court finds that the ALJ's decision, in this regard is based on substantial evidence and consistent with the Regulations and case law.

Second, the ALJ considered that Plaintiff told a psychologist that he liked to fish and grow things in the garden. The ALJ further considered that Plaintiff said he spent most of his time either walking on the treadmill trying to lose some weight or doing housework. The ALJ also considered that Plaintiff's wife said, in a function report, that Plaintiff needed encouragement to do chores; that he did not drive; and that he could shop for basic needs and manage money. Tr. 18. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir.1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a

claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit his complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Third, as considered by the ALJ in regard to Plaintiff's claim that he has a mental impairment, Plaintiff was hospitalized once due to extreme confusion and combativeness, which was due to hepatic encephalopathy. Tr. 18. Seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003); Rautio, 862 F. 2d at 179.

Fourth, the ALJ considered that although Plaintiff testified that he was on a list for a liver transplant, his medical records did not show that he [was] being considered for transplant surgery in the near future." Tr. 22, 37. Plaintiff specifically testified, in response to a question by the ALJ, that he was on a liver transplant list as of the date of the hearing; that it was through Dr. Bacon's office; and that he thought he was number "11 or 12" on the list. Tr. 37-38. As stated by Plaintiff in his Brief in Support of Complaint, Dr. Bacon did state in a letter, dated February 19, 2009, that he spoke with Plaintiff "about the potential for transplant in the future and the need for him to significantly reduce his weight in anticipation of that possibility." Tr. 378. The ALJ considered, in this regard, that Dr. Bacon noted, in November 2009, that Plaintiff was "well compensated and well controlled." Tr. 22, 374. Moreover, when asked by the ALJ "how close [he was] to getting a new liver," Plaintiff testified

12

that "it depend[ed] on how [his] liver deteriorate[d]." Tr. 37-38.  Additionally, as noted by the ALJ, Dr. Bacon reported, in November 2008, that if Plaintiff's end-state liver disease score ("MELD") did not improve from a 13, he would likely initiate transplant work-up. Tr. 16, 265.  However, Dr. Bacon reported that by July 18, 2009, Plaintiff's MELD score had improved to a 10. Tr. 17, 373.  The court finds, therefore, that substantial evidence supports the ALJ's consideration of Plaintiff's testifying that he was on a transplant list.

Fifth, the ALJ considered, in regard to Plaintiff's diabetes, that Plaintiff admitted that he did not always watch his diet. Tr. 21.  A claimant's failure to comply with prescribed medical treatment is inconsistent with complaints of disabling pain. Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996). See also Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987) (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that minimal consumption of pain medication reveals a lack of disabling pain); Rautio, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain).  The court finds that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

Sixth, the ALJ considered that Plaintiff's doctor noted that Plaintiff's glucose was under good control when he was compliant with his diet. Tr. 21.  Additionally, as noted by the ALJ, Plaintiff's hepatic encephalopathy responded well to medication.  In particular, Dr. Bacon reported on February 19, 2009, that lactulose was effective for keeping Plaintiff's "thinking clear." Tr. 378.  On September 24, 2008, Dr. Bacon reported that Plaintiff's glucose had "been running under very good control." Tr. 162.  Also, on November 24, 2008, Dr. Bacon reported that Plaintiff's encephalopathy was "ok"

13

on medication. Tr. 267.  Further, Dr. Bacon reported on July 18, 2009, that Plaintiff was "doing fairly well and he [had] been working on weight loss.  He [had] been successful and [was] down to 277 pounds where he had been at 299 pounds previously."  Dr. Bacon also stated on this date that Plaintiff was "doing well and [he was] encouraging him to continue to lose weight and get down below 250 pounds.  He [was] working on this." Tr. 356.  Dr. Bacon additionally stated that he thought Plaintiff would be successful in this regard. Tr. 356.  Conditions which can be controlled are not disabling. Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989); James for James v. Bowen, 870 F.2d 448,450 (8th Cir. 1989). The court finds, therefore, that the ALJ's considering that Plaintiff's conditions were controlled with diet and medication is based on substantial evidence and that, his decision, in this regard, is consistent with the Regulations and case law.

In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence and that it is consistent with the Regulations and case law.

**B.     The Opinion of Dr. Bacon:**

The ALJ found that Plaintiff had the RFC for light work except that Plaintiff could not climb ladders, ropes, or scaffolds.  The ALJ further found that Plaintiff could not balance his body, when critically necessary, for the performance of job duties; that he needed to avoid exposure to violent vibration, hazardous work settings, or unprotected heights; and that he could remember, understand, and carry out and persist at simple tasks, make simple work-related judgments, relate adequately to coworkers or supervisors, and adjust adequately to ordinary changes in work routine or setting. Tr.

14

19.   As noted by the ALJ, the Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b).  Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251,*6.

Plaintiff contends that the ALJ's RFC determination is flawed because the ALJ should have given controlling weight to Dr. Bacon's opinion in a Medical Source Statement completed on October 27, 2009.  In this Medical Source Statement Dr. Bacon opined  that Plaintiff could frequently lift six to ten pounds; that he could occasionally lift six to ten pounds; that he could stand and/or walk four hours in an eight hour workday and do these things continuously for sixty minutes; that he could sit a total of six hours in an eight hour work day; that he could occasionally bend, kneel, reach, handle and finger; and that he could never work in jobs which required he be exposed to heights, machinery, temperature extremes, fumes, or vibration. Tr. 327-28.

Dr. Bacon was Plaintiff's treating doctor.  "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)).  However, while the opinion of the treating physician should be given great weight, this is true only if the treating

15

physician's opinion is based on sufficient medical data. <u>Leckenby v. Astrue</u>, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); <u>Chamberlain v. Shalala</u>, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing <u>Matthews v. Bowen</u>, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).  "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." <u>Hogan v. Apfel</u>, 239 F.3d 958, 961 (8th Cir. 2001).

First, as considered by the ALJ, the extreme limitations imposed on Plaintiff by Dr. Bacon are inconsistent with Dr. Bacon's own notes, including his reporting that Plaintiff had improved. As discussed above, in regard to Plaintiff's credibility, Dr. Bacon reported that Plaintiff's MELD had improved; that the was doing well; that medication helped control his condition; and that his encephalopathy improved. Significantly, Dr. Bacon reported, in July 2008, that Plaintiff had no edema and normal pulses in his extremities and did not note any abnormalities in regard to Plaintiff's neurological system and psychological examination.  In October 2008, Dr. Bacon reported no abnormalities in regard to Plaintiff's lungs and abdomen; that Plaintiff was ambulatory; that he had no edema in his extremities; and that he was oriented.  On this date Dr. Bacon did not note any abnormalities in regard to Plaintiff's psychological condition.  Moreover, in a letter, dated July 18,

2009, to Dr. Houchin, Dr. Bacon said, among other things, that as of July 7, 2009, Plaintiff was "doing fairly well"; that he had been successful in losing weight; that he did have some symptoms of fatigue and had not been sleeping very well; that there was no evidence of fluid overload; that Dr. Bacon thought Plaintiff was "doing very well"; that he thought Plaintiff would be successful in losing more weight; and that he would see Plaintiff for follow-up in three to four months. Tr. 16-17, 22, 270, 273, 356, 373. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). The court finds, therefore, that the ALJ's determination that Dr. Bacon's assessment should not be given controlling weight based on Dr. Bacon's own records is based on substantial evidence and that it is consistent with the Regulations and case law.

Second, as considered by the ALJ, the extreme limitations imposed on Plaintiff by Dr. Bacon are inconsistent with the findings of other doctors. In particular, as discussed above, Bibi Hasnain, M.D., reported on September 24, 2008, that Plaintiff's glucose was under good control. Dr. Hasnain's physical findings on this date were unremarkable, including that abnormalities were not detected in regard to Plaintiff's neurological exam, that he had no clubbing or cyanosis in his extremities, that his foot exam was within the normal limit, and that his pedal pulses were 2+. Dr. Hasnain also reported on this date that Plaintiff's glucose control had improved and his "free T4 was slightly low, but this [was perhaps] due to acute illness." Dr. Hasnain's psychological findings were normal. Tr. 162-63. Aubra A. Houchin, D.O., reported On October 18, 2008, that Plaintiff's

17

extremities were without deformity and edema; that he was groggy but arousable and answered questions appropriately; that he had no gross motor deficits; that his cranial nerves were intact; that his heart and lungs were normal; that the impression included alcohol intoxication with amnesia, hepatic encephalopathy, and diabetes treated with insulin. Tr. 232.  It was noted, on October 23, 2008, upon Plaintiff's discharge from St. Joseph's Health Center, that his encephalopathy had improved with Lactulose and that his confusion had improved. Tr. 244.  Matthew H. Nissing, M.D., reported, on October 31, 2008, that  Plaintiff had poor short term memory; that he had joint pain, stiffness, swelling and loss of strength; that he had no edema, clubbing or cyanosis in his extremities; and that he was moody and irritable. Tr. 242.   On February 26, 2009, Dr. Hasnain reported that Plaintiff had been "off and on [] having hepatic encephalopathy"; that Plaintiff was negative for fatigue and fever; that his respiratory system was negative for cough and dyspnea; that his cardiovascular system was negative for chest pain and irregular heartbeat; that Plaintiff complained of occasional right sided abdominal pain; that Plaintiff was in no apparent distress and was well nourished and well developed; that no abnormalities were noted in Plaintiff's extremities; that Plaintiff was alert and oriented; and that he had no unusual anxiety or evidence of depression. Tr. 389.

On October 29, 2009, Dr. Hasnain reported that Plaintiff's glucose had been running under good control when he was watching his diet; that Plaintiff's energy level was "fair"; that he was negative for cough and dyspnea; that Plaintiff was in "[n]o apparent distress"; that he was well nourished and well developed; that his respiratory and cardiovascular systems were unremarkable; that, in regard to Plaintiff's extremities, he had a normal monofilament exam, no edema, ulceration or cyanosis; that Plaintiff was alert and oriented and had no unusual anxiety or evidence of depression; and that Plaintiff's blood pressure was slightly elevated. Tr. 391-92.  When considering

the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006) (quoting Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted). As such, the court finds that the ALJ's finding that Dr. Bacon's assessment was inconsistent with findings of other medical sources is based on substantial evidence and that it is consistent with the Regulations and case law. Third, the ALJ did take into consideration some of the limitations imposed by Dr. Bacon in that he found that Plaintiff could not climb and balance his body when necessary and that he should avoid exposure to violent vibration, hazardous work settings, and unprotected heights. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions."). See also Martise v. Astrue, 641 F3d 909, 926 (8th Cir. 2010) (quoting Ellis, 392 F.3d at 994).

Fourth, the ALJ considered that there was no foundation in Dr. Bacon's assessment for his finding that Plaintiff had no tolerance of exposure to heights, temperature extremes,

dangerous/moving machinery, fumes, and vibration. Tr. 22.  The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

Fifth, the ALJ considered the factors specified in 20 C.F.R. § 404.1527 upon determining the weight to be given to Dr. Bacon's opinion.  Consistent with 20 C.F.R. § 404.1527(d)(1)(2) and (5), the ALJ considered that Dr. Bacon was a hepatologist and treated Plaintiff on multiple occasions. Consistent with § 404.1527(d)(3) and (4), the ALJ considered the supportability and consistency of Dr. Bacon's opinion as stated in his assessment.  As such, the court finds that Plaintiff's contention that the ALJ did not consider the Regulations is incorrect.  Further, the court finds that the ALJ's consideration of the Regulations is based on substantial evidence.

Sixth, to the extent Dr. Bacon's assessment involved making checkmarks on a form, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence.  Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996).

Seventh, the ALJ provided good reasons for not giving controlling weight to Dr. Bacon's opinion.  SSR 96-2p clarifies that 20 C.F.R.  §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." SSR 96-1p at *5.

Eighth, the ALJ considered the record as a whole upon determining not to give controlling weight to Dr. Bacon's assessment. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."); Wilson, 172 F.3d at 542.

In conclusion, the court finds that the ALJ gave proper weight to the opinion of Dr. Bacon and that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

## C.      The Opinion of David A. Lipsitz, Ph.D.:

As considered by the ALJ, Plaintiff was seen by Dr. Lipsitz, on March 9, 2009, for a psychological evaluation.  Dr. Lipsitz reported that Plaintiff told him he needed a liver transplant; that his moods were "not too bad"; that he did "not get too depressed"; that he had no sleep problems because he [was] taking sleep medication"; that only when he did not take his sleep medication did he have "some terminal insomnia"; that his appetite was "too good"; that his "energy level fluctuate[d], but his interest level [was] good"; that he "denied any problems with anxiety or panic attacks"; that he was "not seeing a psychiatrist or psychologist at that time"; and that he did not have any past psychiatric treatment or treatment for drug or alcohol abuse.  Dr. Lipsitz further reported that Plaintiff was oriented; that there was no evidence of any psychotic functioning; that there was no significant mood disturbance; that Plaintiff's intellectual functioning was within "average" range; that Plaintiff showed no memory problems; that his concentration "was only fair"; that Plaintiff's "thought processes [were] primarily preoccupied with his medical problems, his need for a liver transplant, and his inability to function within society as he once did; that, at Axis I, Plaintiff had adjustment disorder secondary to physical illness; that, at Axis IV, Plaintiff had occupational problems and problems with social environment; that, at Axis V, Plaintiff had a GAF of 60;[1] that Plaintiff

---

[1]      Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations.  See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or

appeared to "be in need of ongoing psychiatric treatment combining medication with individual psychotherapy; and that "[h]opefully medication could help alleviate [Plaintiff's] adjustment problems and mood disturbances so that he could make a maximal adjustment to his environment in light of whatever physical limitations may be present." Tr. 292-93.  Plaintiff contends that the ALJ gave improper weight to Dr. Lipsitz's opinion.

The court first notes that 20 C.F.R. Ch. lll, pt. 404, supt. P, app.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

---

communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild,"  and scores of 90 or higher represent absent or minimal symptoms of impairment.  Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] ... reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.' " (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)) (alterations in original).

Although "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' ... GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy.")).

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a.  A special procedure must be followed at each level of administrative review.  See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

The mere existence of a mental condition, however, is not per se disabling.  See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a.  This Regulation states that the steps set forth in § 404.1520 also apply to the evaluation of a mental impairment. § 404.1520a(a).  However, other considerations are included.  The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20  C.F.R. § 404.1520a(b)(1).  These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1520a(b)(1).

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1).  The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2).  Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings.  20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme."  20 C.F.R. § 404.1520a(c)(4).  The degree of limitation in  regard to episodes of decompensation  is determined by application of a four-point scale: "[n]one, one or two,

three, four or more." Id.  When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).  When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2).  If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

Upon evaluating Plaintiff's alleged mental impairment the ALJ in the matter under consideration followed the above described procedure.  The ALJ considered the medical evidence, as required by the first step of a mental impairment analysis, as well as Plaintiff's functional limitations.  See Pratt, 956 F.2d at 835; 20 C.F.R. §§ 404.1520a(b)(1), 404.1508.  In particular, the ALJ considered Dr. Lipsitz's report, in detail, as well as the record as a whole. Tr. 17-18.  Further, the ALJ considered the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work as required by 20 C.F.R. § 404.1520a(c)(2).  In regard to Plaintiff's activities of daily living, the ALJ considered Plaintiff's daily activities, as discussed above. In regard to Plaintiff's social functioning, the ALJ considered, as discussed above, that Plaintiff was hospitalized once due to extreme confusion due to hepatic encephopathy and that Plaintiff exhibited no difficulties in doctors' offices or during Dr. Lipsitz's evaluation. Tr. 18.  In regard to concentration, the ALJ considered Plaintiff's medical records, including that when Plaintiff

24

was confused while he was hospitalized, his mental status was cleared within twenty-four hours; that Dr. Bacon reported that Plaintiff took medication which was effective in keeping his functioning clear; and that Plaintiff's wife said he needed reminders to take his medications and that Plaintiff could not go out alone due to his becoming confused.  The ALJ considered, in detail, those aspects of Dr. Lipsitz's report which addressed Plaintiff's functioning, as described above. Tr. 18, 142-43. The ALJ also considered that Plaintiff had one to two episodes of decompensation, each of extended duration.  The ALJ concluded that Plaintiff's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation, each of extended duration that the criteria described above were not satisfied. Tr. 18-19.

The ALJ incorporated his findings regarding Plaintiff's mental status into his RFC finding in that the ALJ found that Plaintiff could understand and carry out and persist at simple tasks, make simple work-related judgments, relate adequately to coworkers or supervisors, and adjust to ordinary changes in work routine or setting. Tr. 19.  The court finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

To the extent Plaintiff alleges that the ALJ gave too much weight to Dr. Lipsitz's opinion and not enough weight to Dr. Bacon's in regard to Plaintiff's mental impairment, Dr. Lipsitz is a specialist in the area of mental health.  "Although a treating physician's opinion is considered to be significant, specialists' opinions are generally afforded more weight." Qualls v. Apfel, 158 F.3d 425, 428 (8th Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(5)).  The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Kelley v. Callahan, 133 F.3d 583, 589 (8th

25

Cir. 1998) (citation omitted). See also 20 C.F.R. §§ 404.1527(d)(5), and 416.927(d)(5). Further, the ALJ considered Dr. Lipsitz's opinion in the context of the record as a whole. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole). Additionally, Dr. Lipsitz's evaluation was thorough and in his area of specialty. "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007) (quoting Prosch, 201 F.3d at 1014). Moreover, as discussed above, there are inconsistencies between Dr. Bacon's assessment and his medical records. Under such circumstances, the ALJ could give greater weight to Dr. Lipsitz's opinion than to Dr. Bacon's opinion. Id. (citing Anderson v. Barnhart, 344 F.3d 809, 812-13 (8th Cir.2003)). As such, the court finds that the ALJ gave proper weight to Dr. Lipsitz's opinion and that the ALJ's decision in regard to the weight given Dr. Lipsitz's opinion is based on substantial evidence and consistent with the Regulations and case law.

D.    **Opinions of Robert Cottone, Ph.D., and Despine Coulis, M.D.:**

       Plaintiff contends that the ALJ improperly relied on the opinions of Dr. Cottone and Dr. Coulis. On March 27, 2009, Dr. Cottone completed a Psychiatric Review Technique Form and a Mental RFC Assessment regarding Plaintiff based on his review of Plaintiff's medical records, including Dr. Lipsitz's report, as well as the report of Plaintiff's wife. Tr. 296-310. Dr. Cottone reported that Plaintiff had mild limitations in the areas of daily activities and maintaining social functioning; that he was moderately limited in maintaining concentration, persistence, or pace; that he had one or two episodes of decompensation; that it was reported that within a "very short period of increasing [Plaintiff's] dose of Effexor ... his depression and anxiety [] resolved"; that Dr. Lipsitz

26

found that Plaintiff' had adjustment disorder secondary to physical illness; that Plaintiff was not significantly limited in regard to two areas of understanding and memory and was markedly limited in regard to understanding and remembering detailed instructions; that Plaintiff was not significantly limited in the four areas of sustaining concentration and persistence, was moderately limited in maintaining attention and concentration for extended periods, and markedly limited in carrying out detailed instructions; that Plaintiff was moderately limited in regard to completing a normal workday without interruptions; that he was not significantly limited in all areas of social interaction; and that he was not significantly limited with regard to adaption with the exception that he was moderately limited in setting realistic goals or making plans independently. Dr. Cottone concluded that Plaintiff could understand, remember, and carry out and persist at simple tasks, make simple work-related judgments, could relate adequately to co-workers, and adjust adequately to ordinary changes in work routine and setting.

Dr. Coulis, a State agency physician, completed a Physical RFC Assessment regarding Plaintiff. Tr. 311-17.  Based on the evidence of record, Dr. Coulis concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk and sit about six hours in an eight-hour workday, had unlimited ability to push and/or pull, could frequently balance, stoop, kneel, crouch, and crawl, could occasionally climb, had no manipulative, visual, or environmental limitations, with the exception that Plaintiff should avoid fumes, odors, dusts, gases, poor ventilation, and hazards.

An ALJ is not bound by the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).  However, state agency consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social

Security disability evaluation, and as such, the ALJ must consider their findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). "'[M]edical opinions' are defined as 'statements from physicians and psychologists or other acceptable medical sources.'" Lacroix v. Barnhart, 465 F.3d 881, 886 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1521(a)).

In evaluating the opinion of the state agency physician, the ALJ will weigh the findings of the consultant using the relevant factors in paragraphs (a) through (e) in 20 C.F.R. § 404.1527 and § 416.927, as the ALJ would in evaluating the opinions of other medical sources. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). Just as with the opinions of other medical sources, the ALJ must explain the weight given to the opinions of the state agency consultant, unless a treating source's opinion is given controlling weight. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). In determining the weight to be given to the state agency consultant's opinion, the ALJ "must minimally articulate his reasons for crediting or rejecting evidence of disability." Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992)) (internal citations omitted).

The ALJ in the matter under consideration properly considered the reports of both Dr. Cottone and Dr. Coulis, both of whom specifically addressed aspects of the record upon which they relied in reaching their conclusions. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); Lacroix, 465 F.3d at 886. Significantly, the ALJ did not rely exclusively on either of these doctors' reports, but rather evaluated the record as a whole. See Hogan, 239 F.3d at 961. To the extent he relied on the opinions of Dr. Cottone and/or Dr. Coulis, the ALJ at least minimally articulated his reasons for doing so. See Ingram, 107 F.3d at 601. In conclusion, the court finds that the ALJ gave proper

28

weight to the assessments of Dr. Cottone and Dr. Coulis and that the ALJ's decision, in regard to their assessments is based on substantial evidence and consistent with the Regulations and case law.

**D.      Hypothetical Posed to the VE:**

RFC is "what [a claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). As a preliminary matter, the court finds that the ALJ's RFC determination is based on substantial evidence. Based on a hypothetical posed to him by the ALJ, which described a person with RFC that the ALJ assigned to Plaintiff, as set forth above, the VE testified that there was work in the economy which such a person could perform and that this work included bench assembler, stocker, and mail clerk. Tr. 50-52. Plaintiff contends that the ALJ improperly relied on the testimony of the VE that there was work in the national and local economy which Plaintiff could perform because this hypothetical did not account for the limitations found by Dr. Bacon in his October 27, 2009 Medical Source Statement.

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Martise v. Astrue,691 F.3d at 927 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix, 465 F.3d at 889); Guilliams, 393 F.3d at 804 (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health, Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio, 862 F.2d at 180. A hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591,

595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Martisse, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

Even though a vocational expert does not specifically recite factors in his answers, an ALJ can properly assume that the vocational expert "framed his answers based on the factors the ALJ told him to take into account." Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991). Where an ALJ's hypotheticals included all of a claimant's impairments as supported by the record, and the expert limited his opinion in this regard, an ALJ properly relies on the vocational expert's testimony. Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995).

Thus, the ALJ in the matter under consideration was not required to include in a hypothetical to the VE limitations imposed on Plaintiff by Dr. Bacon because the ALJ did not find these limitations credible. See Martise, 691 F.3d at 927. Because the ALJ included in the hypothetical

which he posed to the VE and upon which he relied, all of the limitations which the ALJ found credible, the court finds that the ALJ properly relied on the testimony of the VE and that the ALJ's decision, in this regard, is supported by substantial evidence. See id.  Because the hypothetical at issue was properly posed, because it included all of Plaintiff's credible limitations, and because the VE testified that there was work which the hypothetical person could perform, the court finds that the Commissioner met his burden to show that there are a substantial number of jobs in the economy which Plaintiff can perform. See id.

To the extent Plaintiff contends that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), the court finds to the contrary.  A claimant's "reliance on the DOT as a definitive authority on job requirements is misplaced" because "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000) (quoting Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997). See also Page v. Astrue, 484 F.3d 1040, 1045 (8th Cir. 2007). Thus, the reasoning levels listed in the DOT for the positions to which the VE referred are the maximum reasoning levels, not the exclusive reasoning levels for those positions. See id. Moreover, the VE testified that his testimony was consistent with the DOT. Tr. 23, 52.  As stated above, a VE's testimony based on a properly phrased hypothetical constitutes substantial evidence. See Martise, 641 F.3d at 927.  In conclusion, the court finds that the ALJ's determination that there are other jobs which exist in significant numbers in the economy which Plaintiff can perform is supported by substantial evidence and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.  As such, the court further finds that the ALJ properly found that Plaintiff is not disabled. See Young, 221 F.3d at 1069 n.5; Harris, 356 F.3d at 931 n.2.

**IV.**
**CONCLUSION**

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 16

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum Opinion.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this <u>14th</u> day of May, 2012.

32